UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

RANDY MATTISON
                    Plaintiff,

        v.                                        DECISION AND ORDER
                                                      07-CV-1042 (VEB)

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

                    Defendant,

## I. Introduction

Plaintiff Randy Mattison, challenges an Administrative Law Judge's ("ALJ")

determination that he is not entitled to disability insurance benefits ("DIB") under

the Social Security Act ("the Act").  Plaintiff alleges he has been disabled since

March 15, 1999, because of pain and limitations from a herniated lumbar disc,

angina, shoulder pain, bipolar disorder, depression, and chronic obstructive

pulmonary disease.  Plaintiff met the disability insured status requirements of the

Act through June 30, 2001.

## II.  Background

Plaintiff filed an application for DIB and Supplemental Security Income

("SSI") benefits on September 23, 2004.  (R.[1] at 60, 6-7).  In the application,

Plaintiff alleges that he has been disabled since March 15, 1999.  (R. at 50, 4).

Pursuant to Plaintiff's request, an administrative hearing was held on October 4,

---

[1] Citations to the underlying administrative record are designated as "R".

2005, before ALJ Thomas P. Zolezzi, at which time, plaintiff, his attorney, and a vocational expert appeared.  (R. at 497).  The ALJ considered the case *de novo*, and on December 12, 2005, issued a decision finding that Plaintiff was not disabled.  (R. at 55, 18-23).  On February 22, 2006, the Appeals Council granted a review of the matter, vacated the decision, and remanded Plaintiff's case for a new hearing because the hearing decision did not adequately evaluate the severity of the claimant's chronic obstructive pulmonary disease, nor provide appropriate rationale for each of the four areas of mental functioning described in 20 CFR 404.1520a(c) and 416.920a(c)[2], nor evaluate the State agency medical consultant opinions in accordance with Social Security Ruling 96-6p.  (R. at 67, 7-18).  Plaintiff, his girlfriend, his attorney, and a vocational expert appeared before ALJ Thomas P. Zolezzi for a subsequent hearing on November 27, 2006.  (R. at 530).  The ALJ considered the case *de novo*, and on January 18, 2007, issued a decision finding that Plaintiff was not disabled for DIB before September 23, 2004, however, he was found disabled for SSI by the ALJ on and after September 23, 2004.  (R. at 22, 16-18).  On July 31, 2007, the Appeals Council denied Plaintiff's request for review.  (R. at 6).

On October 2, 2007, Plaintiff filed a civil complaint challenging Defendant's final decision and requesting the Court to review the decision of the ALJ pursuant to Section 205(g) and 1631(c)(3) of the Act, modify the decision of Defendant, and grant DIB to Plaintiff.[3]  (Docket No.1).  The Defendant filed an

---

[2] These four functional areas are: activities of daily living; social functioning; concentration, persistence and pace; and episodes of decompensation.  See 20 C.F.R. §§ 404.1520a(c)(3) and 416.920a(c)(3).
[3] The ALJ's January 18, 2007 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

answer to Plaintiff's complaint on March 18, 2008, requesting the court to dismiss Plaintiff's complaint.  (Docket No.9).  Plaintiff submitted Plaintiff's Brief on June 2, 2008.  (Docket No. 15).  On July 10, 2008, Defendant filed a Brief in Support of the Commissioner's Motion for Judgment on the Pleadings[4] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket No. 16).  After full briefing, the court deemed oral arguments unnecessary and took the motions under submission.

For the reasons set forth below, the Court finds no reversible error and finds that substantial evidence supports the ALJ's decision.  Thus, the Court affirms the decision of the Commissioner.

### III. Discussion

#### A. Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See *42 U.S.C. § 405(g), 1383(c)(3); Wagner v. Sec'y of Health and Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error.  See *Grey v. Heckler,* 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amount to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S.

---

[4] Under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings…"

389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  *Valente v. Sec'y of Health and Human Servs.,* 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process[5] to determine whether an individual is disabled as defined under the Social Security Act.  See 20 C.F.R. § 404.1520, 416.920.  The United States

---

[5] This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the

Supreme Court recognized the validity of this analysis in *Bowen v. Yuckert*, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled. While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See *Bowen*, 482 U.S. at 146 n.5; *Ferraris v. Heckler*, 728 F.2d 582 (2d Cir. 1984).

The final step of the inquiry is, in turn, divided into two parts. First the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C.§ 423(d)(2)(A); 20 C.F.R.§§ 416.920(g); 404.1520(f); *Heckler v. Campbell*, 461 U.S. 458, 460, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983).

### B. Analysis

#### 1.      Commissioner's Decision

In this case, the ALJ made the following findings with regard to factual information as well as the five-step process set forth above:  (1) Plaintiff met the

---

claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

See *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

insured status requirements of the Social Security Act through June 30, 2001 (R. at 17, 18-19); (2) Plaintiff has not engaged in substantial gainful activity since March 15, 1999, the alleged onset date (20 C.F.R. §§404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*) (R. at 17, 20-21); (3) Plaintiff has the following severe combination of impairments:  degenerative disc disease of the lumbar spine, chronic obstructive pulmonary disease, and depression (20 C.F.R. §§404.1520(c) and 416.920(c)) (R. at 17, 22-24); (4) Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed in impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR §§404.1520(d) and 416.920(d)) (R. at 17, 26-28); (5) After careful consideration of the entire record, the ALJ found that Plaintiff has the residual functional capacity before September 23, 2004 to do the following: lift, and carry ten pounds frequently and twenty pounds occasionally and sit, stand, and walk six hours each in an eight hour workday with no concentrated gases, fumes, odors, smoke, dust, or poor ventilation[6]  (R. at 17, 29-33);  he can perform simple entry level work requiring no complex decision making, low stress work requiring no planning, no scheduling, no report writing, no supervising, or high quota production; little or no changes in the work setting or environment; and occasional but not frequent interaction with co-workers, working in proximity to co-workers, but only occasionally in conjunction with or coordination with them;

---

[6] Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, the plaintiff must have the ability to do substantially all of these activities.  If someone can do light work, then he or she can also do sedentary work, unless there are additional limiting factors such as loss of dexterity or inability to sit for long periods of time.  See 20 C.F.R. §§ 404.1567(b).

and occasional interaction with the public, and no climbing of ladders or scaffolds and no walking on uneven ground (R. at 17-18). However, beginning September 23, 2004, the Plaintiff has had the residual functional capacity to lift and carry no more than ten pounds at a time, sit six hours in an eight hour work day, and stand and walk two hours in an eight hour workday[7]  (R. at 18, 4-7). Plaintiff can perform simple entry level work requiring no complex decision making; low stress work requiring no planning, no scheduling, no report writing, no supervising, or high quota production; little or no changes in the work setting or environment; and occasional but not frequent interaction with co-workers, working in proximity to co-workers, but only occasionally in conjunction with or coordination with them, and occasional interaction with the public (R. at 18, 7-12); (6) Plaintiff has been unable to perform past relevant work since the alleged onset date (20 C.F.R. §§404.1565 and 416.965) (R. at 20, 28-29); (7) Plaintiff was born on August 18, 1964 and is 39 years old, which is defined as a younger individual, age 18-44 (20 C.F.R. §§ 404.1563 and 416.963) (R. at 20, 34-35); (8)  Plaintiff has a limited education[8] and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.968) (R. at 20, 36-37); (9) transferability of job skills is not an issue because

---

[7] Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. See 20 C.F.R. §§ 404.1567(a).

[8] Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these education qualifications to do most of the more complex duties needed in semi-skilled or skilled jobs.  Generally, 7th grade through the 11th grade level of formal education is a limited education. See 20 C.F.R. § 404.1564(b)(3).

Plaintiff's past relevant work is unskilled[9] (20 C.F.R. §§ 404.1568 and 416.968) (R. at 20, 38-39); (10) prior to September 23, 2004, considering Plaintiff's age, education, work experience, and residual functional capacity, there were significant numbers of jobs in the national economy that claimant could have performed (20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c), and 416.966) (R. at 21, 1-4); (11) Beginning on September 23, 2004, considering Plaintiff's age, education, work experience, and residual functional capacity, there are not a significant number of jobs in the national economy that Plaintiff could perform (20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c), and 416.966) (R. at 21, 38-41); (12) Plaintiff was not disabled, prior to September 23, 2004, but became disabled on that date and has continued to be disabled through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)) (R. at 22, 16-18); and (13) Plaintiff was not under a disability within the meaning of the Social Security Act at any time through June 30, 2001, the date last insured (20 C.F.R. §§404.315(a) and 404.320(b)) (R. at 22, 19-21).  Ultimately, the ALJ determined Plaintiff was not entitled to a period of disability and disability insurance benefits as set forth in sections 216(i) and 223(d) of the Social Security Act from the filing of application alleging an onset of disability date of March 15, 1999**,** through June 30, 2001, the date last insured; however, the ALJ determined that Plaintiff has been disabled

---

[9] Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength.  For example, jobs are unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed.  A person does not gain work skills by doing unskilled jobs.  See 20 C.F.R. § 404.1568(a).

under section 1614(a)(3)(A) of the Social Security Act beginning on September 23, 2004  (R. at 23, 1-6).

        **2.**        **Plaintiff's Claims**

Plaintiff challenges the ALJ's decision on the basis that it is not supported by the substantial evidence of record and the existence of legal errors.  First, Plaintiff argues the ALJ erred by finding Plaintiff did not meet or equal an impairment listing at 20 C.F.R. Part 404, Subpart P, Appendix 1, §1.04 A prior to September 23, 2004.  Second, he argues that the ALJ erred by not fully developing the record regarding Listing 1.04(C), the mental impairment, and the side effects of medication.  Third, Plaintiff contends the ALJ failed to properly credit the testimony of the Plaintiff.  Fourth, Plaintiff claims the ALJ improperly and inconsistently weighed the opinions of the treating physicians.  Fifth, Plaintiff argues the ALJ failed to adequately consider the effect of Plaintiff's nonexertional medication-related and mental health conditions on his residual functional capacity prior to September 23, 2004.  Sixth, Plaintiff contends that his medically determinable and objectively verifiable conditions precluded the full range of sustained light work before September 23, 2004. The court addresses each argument in turn.

        **a.**        **Substantial Evidence Supports the ALJ's Conclusion that Plaintiff's Back Impairment Did Not Meet Listing §1.04(A) Before June 30, 2001.**

Plaintiff contends that his back impairment meets or equals a disorder of the spine identified in § 1.04(A), 20 C.F.R. Part 404, Sub Part P, Appendix 1 (commonly referred to as "the Listing").

"The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity."  20 C.F.R. § 416.925(a).  If a claimant's impairment or combination of impairments meets or medically equals a listed impairment, the evaluation process is concluded and the claimant is considered disabled without considering the claimant's age, education, or work experience. 20 C.F.R. §416.920(a)(4)(iii).  Listing 1.04(A) provides as follows:

> Disorders of the spine (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equine) or the spinal cord.  With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[10];… 20 C.F.R. Pt. 404, Subpt. P, App.1.

"Thus, in order to satisfy this listing, Plaintiff must establish that (1) she has a disorder of the spine which compromises a nerve root or the spinal cord, and (2) that this disorder is manifested by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."  *McKinney v. Astrue*, 5:05-CV-174, 2008 U.S. Dist. LEXIS 46976, 2008 WL 312758, at 9-10 (N.D.N.Y. Feb. 1, 2008).  In order to show that an

---

[10] The straight leg raise test ("SLR") is used to detect nerve root pressure, tension or irritation. A positive SLR requires the reproduction of pain at an elevation of less than 60 degrees. A positive SLR is said to be the most important indication of nerve root pressure. Andersson and McNeill, Lumbar Spine Syndromes, 78-79 (Springer-Verlag Wein, 1989).

impairment meets the requirements of a listing, "it must meet all of the specified medical criteria."  *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990).

Evidence of an impairment that reached disabling severity after the expiration of an individual's insured status cannot be the basis for a disability determination, even though the impairment itself may have existed before the individual's insured status expired.  See *Norris v. Barnhart*, 2002 U.S. Dist. LEXIS 23844, at 12 (S.D.N.Y. 2002); see 42 U.S.C. §§ 423(a)(1)(A) and 423(c). However, evidence of an applicant's condition subsequent to the expiration of her insured status "is pertinent evidence in that it may disclose the severity and continuity of impairments existing before [the date of her insured status expires]." *Gold v. Secretary of* HEW, 463 F.2d 38, 41-42 (2d Cir. 1977), quoting *Carnevale* v. *Gardner,* 393 F.2d 889, 890 (2d Cir. 1968).

Plaintiff argues that his back impairment satisfies the requirements of §1.04(A).  First, Plaintiff points to a June 3, 2002 MRI, which showed a herniated disc at L4-L5 and a disc bulging at L5-S1.  (R. at 199, 15-16 and 22-23).  Also, it appears that Plaintiff is referring to the January 23, 2003 IR Discography Lumbar S&I, which concludes "Positive L4-5 discogram with prominent posterior tear." (R. at 284).  Next, Plaintiff points to medical records from Mary McClellan hospital on December 31, 1998, coupled with medical reports from Dr. Donald Merrihew.  (R. at  458-462, 463-494).  As to the latter, Dr. Donald Merrihew reported "total disability."  (R. 146).  Moreover, Dr. Fred Scialabba noted that Plaintiff was "100% disabled" on July 19, 2002 as well as on other occasions.  (R.

219, 216, 214, 210-211, 208, 207, 205).  Further, Plaintiff contends that Dr.

Selig's reports were consistent with Dr. Merrihew and Dr. Sciallaba's findings. (R.

341-342, 344-345, 361-365, 436).  Lastly, Plaintiff refers to non-medical evidence

of Beverly Waite's testimony as evidence of Plaintiff's limitation of activity.  (R. at

562-566).

The ALJ concluded that until September 23, 2004, Plaintiff does not meet

§1.04(a) of the Listing.  (R. at 17, 26-28).  In support of this conclusion, the ALJ

referred to examinations showing some decreased range of motion of the lumbar

spine; however, Plaintiff was able to walk on heels and toes without difficulty,

straight leg raising was negative bilaterally, and he was able to hop on each foot.

(R. at 19, 7-11).

The burden is on the claimant to present medical findings that show that

his or her impairments meet a listing or are medically equal in severity to a listed

impairment.  *Zwick v. Apfel*, No. 97 Civ. 5140, 1998 U.S. Dist. LEXIS 11515,

1998 WL 426800 at 10 (S.D.N.Y. July 27, 1998).  In order to show that an

impairment meets a Listing, the claimant must show that his or her impairment

meets *all* of the specified medical criteria.  *Sullivan v. Zebley*, 493 U.S. 521, 530,

110 S. Ct. 885, 107 L. Ed. 2d 967 (1990); 20 C.F.R. § 404.1525(d).  If a

claimant's impairment "manifests only some of those criteria, no matter how

severely," the impairment does not qualify.  *Id.*

As to whether there was nerve compression, the MRI evidence shows "…

it approximates the right L5 nerve root..." (R. 199, 17-18).  The discogram on

January 23, 2003 does not indicate a finding of nerve compression.  (R. 284).

Although the result of some objective clinical tests show approximation of nerve compression after June 30, 2001, they do not definitively confirm that Plaintiff's spinal impairment resulted in compromise of a nerve root, as required by Listing 1.04(A) for the time period on or before June 30, 2001.

Moreover, treatment notes from Plaintiff's physicians do not sufficiently establish the existence of L5 nerve root symptoms, nor do they show that Plaintiff suffered from *all* physical limitations related to the spine as required under Listing 1.04(A) for the time period on or before June 30, 2001.  On December 31, 1998, Plaintiff was examined at Mary McClellan Hospital and diagnosed with a wrist sprain, cervical strain, and abdominal pain.  (R. 459).  Dr. Donald Merrihew noted Plaintiff's back discomfort; however, he diagnosed Plaintiff with whiplash, neck strain, shoulder sprain, shoulder strain, wrist sprain, and wrist strain on January 5, 1999.  (R. 146-147).  There is no medical evidence of difficulty with straight leg raising, limitations on range of motion, diminution in muscle strength, existence of spasms or leg radiculitis on or before June 30, 2001.

Further, medical records from Plaintiff's physicians after June 30, 2001, do not buttress the existence of a continuing and severe impairment with *all* requirements under The Listing 1.04(A).  On January 29, 2002, Dr. Donald Merrihew found Plaintiff was working and not disabled despite noting Plaintiff's difficulty with the straight leg raise. (R. 139-140).  On July 19, 2002, Dr. Fred Scialabba, found Plaintiff did not describe radicular type symptoms, had positive straight leg raising bilaterally, and normal motor strength and reflexes.  While Plaintiff could not bend over to touch his toes, he could heal and toe walk with

only minor difficulty.  (R. 217, 245).  Dr. Dominic Belmonte found Plaintiff had no

spasm in the back, he demonstrated full range of motion of the lumbosacral

spine, was able to ambulate with normal gait, and performed a full squat on

November 26, 2002.  (R. 19, 238).  On February 27, 2004, Dr. Allen Carl found

negative straight leg raising signs and Plaintiff sustained no problems with

bladder or bowel control.  (R. 224, 387).  Dr. Robert Sellig indicated Plaintiff was

able to walk satisfactorily on heel and toe on May 10, 2005.  (R. 341, 344).

The medical evidence reviewed above does not establish that Plaintiff met

*all* of the requirements of Listing 1.04(A).  The listing is worded so as to require

the combination of *all* symptoms as well as evidence of a compromised nerve

root or spinal cord.  The evidence fails to establish these listing requirements.

Thus, the ALJ's decision that Plaintiff's back impairment did not satisfy Listing

1.04(A) was supported by substantial evidence.

> **b.  The ALJ Fairly and Fully Developed the Record as to: (i) Listing 1.04(C); (ii) the Mental Impairment; and (iii) the Side Effects of the Medication.**

> > **(i)    The ALJ Fairly and Fully Developed the Record as to Listing 1.04(C).**

Plaintiff contends that he was denied a full and fair hearing before the ALJ,

in part because the ALJ erred by not fully developing the record to determine

whether Plaintiff met the listing at 20 C.F.R. Part 404, Subpart P, Appendix 1,

§1.04 C.

Listing 1.04(C) provides as follows:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease,

14

facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With: . . .C. Lumbar spinal stenosis resulting in pseudoclaudication[11], established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

Listing 1.00B2b provides as follows:

The inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

---

[11] Pseudoclaudication, or neurogenic claudication, means intermittent limping caused by lumbar spinal stenosis. See Stedman's Medical Dictionary 360 (27th ed. 2000).

Even when a claimant is represented by counsel, it is the well-established rule in our circuit "that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants… affirmatively develop the record in light of the essentially non-adversarial nature of benefit proceedings." *Lamy v. Comm'r of Soc. Sec.,* 562 F.3d 503, 508-509 (2d Cir. 2009) (internal quotation marks and brackets omitted); accord *Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir. 2004), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). Social Security disability determinations are "investigatory, or inquisitorial, rather than adversarial." *Butts*, 388 F.3d at 386 (internal quotation marks omitted). "[I]t is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Id.* (internal quotation marks omitted); accord *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999).

At the October 4, 2005 hearing, the ALJ inquired as to Plaintiff's ambulation. The ALJ asked Plaintiff, "Do you have any problems climbing stairs?" (R. at 504, 5). Plaintiff replied "Only if I'm trying to—not unless there's a lot of them or something, I usually take an elevator or something." (R. at 504, 6-7). The ALJ inquired as to "What happens on the treadmill?" (R. at 512, 2). Plaintiff answered "It causes pain in my back just to walk." (R. at 512, 3).

At the November 27, 2006 hearing, the ALJ asked Plaintiff if he felt radiating pain. (R. at 541, 14). Plaintiff answered "Yeah, down my right leg." (R. at 541, 15). Next, the ALJ inquired "Does that affect your ability to stand or walk?" (R. at 541, 16). Plaintiff replied "Well my legs go numb and it affects me

when I'm walking…"(R. at 541, 17-19). The ALJ asked "…if you were hunting, would you be able to walk through uneven ground?"  (R. at 543, 15-16).  Plaintiff answered "… the uneven ground bothers, bothers [me] because just the muscles moving in my back will cause pain."  (R. at 543, 17-18).

The record does not support Plaintiff's contention that the ALJ did not fully and fairly develop the record as to Listing 1.04(C).  The October 4, 2005 hearing transcript is thirty-one pages and the November 27, 2006 hearing transcript is fifty-one pages.  This is not a scant record. The ALJ reviewed objective medical evidence including the June 3, 2002 MRI of the lumbar spine.  (R. at 18).  The ALJ also considered medical opinions related to Plaintiff's ambulation by noting Plaintiff "…was able to walk on heels and toes without difficulty… he was able to hop on each foot… claimant cared for 7 pigs, 2 goats, 12 ducks, and 24 chickens."  (R. at 19).  The ALJ considered Dr. Merrileu's medical opinion, which indicated Plaintiff's limitations "…in standing and walking 30 minutes."  (R. at 19).  Thus, the ALJ thoroughly, fairly and fully developed the record as to Listing 1.04(C).

### ii      The ALJ Fairly and Fully Developed the Record as to the Mental Impairment.

Plaintiff contends the ALJ erred by not fully developing the record as to the existence of a mental impairment before September 23, 2004.  Specifically, Plaintiff points to testimony of his depressive symptoms before stopping work in 1998.  (R. at 548).

Even when a claimant is represented by counsel, it is the well-established rule in our circuit "that the social security ALJ, unlike a judge in a trial, must on

behalf of all claimants… affirmatively develop the record in light of the essentially non-adversarial nature of benefit proceedings." *Lamy v. Comm'r of Soc. Sec.,* 562 F.3d 503, 508-509 (2d Cir. 2009) (internal quotation marks and brackets omitted); accord *Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir. 2004), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996).

At the October 4, 2005 hearing, the ALJ inquired "How about for the depression and the anger management?  Do you go to a psychiatrist or a psychologist for that?" (R. at 512, 15-16).  Plaintiff answered "Yeah…" (R. 512, 17).  The ALJ asked "Is there any doctor in particular you see for that?" (R. at 513, 3).  Plaintiff replied "I see a Dr. Short." (R. at 513, 4).

At the November 27, 2006 hearing, the ALJ asked "…Raymond Short…how long has he been your counselor?" (R. at 547, 18-19).  Plaintiff answered "Over a year." (R. at 547, 20).  Next, the ALJ inquired "… how long has Kathleen Worick been reviewing your medications?" (R. at 547, 21-22).  Plaintiff replied "Same time." (R. at 547, 23).  Next, the ALJ asked "Okay.  Prior to that, were you seeing anybody for depression?" (R. at 547-548).  Plaintiff answered "No." (R. at 548, 2).

The record supports the ALJ's exploration of medical evidence related to the mental impairment.  As to the mental impairment, the ALJ accurately noted that before April 2005 "…Plaintiff had not had any prior treatment, counseling, or hospitalizations." (R. at 20, 4-5).  Based on the reasons set forth above, the

Court finds that the ALJ fully and fairly developed the record as to the mental impairment.

### (iii)  The ALJ Fairly and Fully Developed the Record as to the Side Effects of the Medication.

Plaintiff contends the ALJ erred by not fully developing the record as to "The extent to which his drowsiness affects his ability to concentrate and/or maintain persistence or pace was either underestimated or simply not addressed by the ALJ..." (Plaintiff's Brief at 11).

As noted above, even when a claimant is represented by counsel, it is the well-established rule in our circuit "that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants… affirmatively develop the record in light of the essentially non-adversarial nature of benefit proceedings."  *Lamy v. Comm'r of Soc. Sec.,* 562 F.3d 503, 508-509 (2d Cir. 2009) (internal quotation marks and brackets omitted); accord *Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir. 2004), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996).

At the October 4, 2005 hearing, the ALJ asked, "…do you find that the medications are helping you at all?"  (R. at 515, 16-17).  Plaintiff answered "Yes." (R. at 515, 18).  Next, the ALJ questioned "… do you find that they have any side effects on you?"  (R. at 515, 19).  Plaintiff stated "Not that I've noticed."  (R. at 515, 20).

At the November 27, 2006 hearing, the ALJ asked "Other than making you groggy does the medication cause any other side effects?" (R. at 551-552).

Plaintiff answered "Well it makes me, you know, pretty much go to sleep."  (R. at 552, 2).

The record does not support Plaintiff's contention that the ALJ failed to fairly or fully develop the record regarding the side effects of the medication. After carefully reviewing the record, the Court finds no evidence that before September 23, 2004, Plaintiff complained to his doctors that his medications induced drowsiness.  Further, on November 26, 2002, Dr. Belmonte described Plaintiff's active lifestyle by stating that Plaintiff "[f]eeds his 7 pigs, 2 goats, 12 ducks, and 24 chickens."  (R. at 238).  On February 29, 2004, Dr. Merrihew examined Plaintiff and found no limitations regarding his ability to maintain attention.  (R. at 256).  Therefore, the Court finds the ALJ fairly and fully developed the record as to the side effects of the medication.

### c.  Substantial Evidence Supports the ALJ's Assessment of Plaintiff's Credibility.

Plaintiff contends that the ALJ did not have legitimate reasons to conclude that Plaintiff's testimony regarding his pain and limitations was not credible. Further, Plaintiff complains that the ALJ did not sufficiently explain his reasoning. Plaintiff further contends that his significant work history entitles him to substantial credibility.

While a claimant's long work history "lends significant weight to [his] subjective complaints … it is by no means a dispositive factor."  Wanzo v. Commissioner of Social Sec., 2008 U.S. Dist. LEXIS 65085 at 10, 2008 WL 3925542 at 4 (N.D.N.Y. Aug. 20, 2008).  The ALJ is entitled to deference in his

assessment of credibility when, as here, he sees Plaintiff testify multiple times and assesses his demeanor.  Gernavage v. Shalala, 882 F. Supp. 1413, 1419 n.6 (S.D.N.Y. 1995).

Additionally, courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered.  See *Ber v. Celebrezze*, 332 F.2d 293 (2d Cir. 1994).  However, subjective symptomatology, without more, cannot be the basis for a finding of disability.  A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged.  See 42 U.S.C. §§ 423(d)(5)(A), 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p, 1996 SSR LEXIS 4; *Gernavage v. Shalala*, 882 F.Supp. 1413, 1419 (S.D.N.Y. 1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence."  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the claimant's credibility, set forth in SSR 96-7p, 1996 SSR LEXIS 4:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment(s)… that could reasonably be expected to produce the individual's pain or other symptoms…

> Second, … the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities…
>
> According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(C)(3)(i)-(vii),

if the claimant's contentions of disabling pain and other limitations are not

supported by objective medical evidence, the ALJ must consider the following

factors in order to make a credibility determination:

1. Plaintiff's daily activities;
2. The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medications [Plaintiff] takes or has taken to alleviate … pain or other symptoms;
5. Treatment, other than medication [Plaintiff] receives or has received for relief of … pain or other symptoms.
6. Any measure [Plaintiff] uses or has used to relieve … pain or other symptoms;
7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds the claimant's contentions are not credible, he or she must

state his reasons "explicitly and with sufficient specificity to enable the Court to

decide whether there are legitimate reasons for the ALJ's disbelief."  *Young v.*

*Astrue*, No. 7:05-CV-1027, 2008 U.S. Dist. LEXIS 76704, 2008 WL 4518992, at

31 (N.D.N.Y. Sept. 30, 2008) (quoting *Brandon v. Bowen*, 666 F. Supp. 604, 608

(S.D.N.Y. 1987)).

In this case, Plaintiff alleged symptoms including "back and shoulder pain

and … limitations with sitting, standing, and walking."  (R. at 18, 19-20).  Plaintiff

testified that "he has pain every day."  (R. at 18, 20-21).  Further, Plaintiff testified

that his pain was of such intensity that he "does not shop, cook, clean, or do

laundry."  (R. at 18, 26).  The ALJ found that Plaintiff's medical impairments could be expected to produce the alleged symptoms; however, those "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible prior to September 23, 2004."  (R. at 18, 32-33).  The ALJ cited the medical evidence and Plaintiff's testimony concerning his activities of daily living in support of his decision to discount the credibility of Plaintiff's subjective complaints of disabling pain.  Specifically, the ALJ noted that Plaintiff "cared for 7 pigs, 2 goats, 12 ducks, and 24 chickens."  (R. at 19, 10-11).  Although Plaintiff's subjective complaints suggested an inability to work, he admitted to hunting up until 2001.  (R. at 519, 25).  On September 23, 2004, Dr. Fred Scialabba, a treating physician, opined that "claimant was ready to consider light duty or sedentary work."  (R. at 19, 19-20).  On November 26, 2002, Dr. Dominic Belmonte stated that "claimant could be employed on a full-time basis in a light duty capacity with avoidance of repetitive bending and stooping, as well as lifting in excess of 35 pounds."  (R. at 19, 27-29).

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant."  *Carroll v. Secretary of Health and Human Servs.,* 705 F.2d 638, 642 (2d Cir. 1983) (citations omitted).  If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a clamaint's subjective complaints of pain."  *Aponte v. Sec'y, Dep't of Health & Human Servs.,* 728 F.2d 588, 591 (2d Cir. 1984) (citations omitted).  Further, the ALJ has the benefit of directly observing a claimant's demeanor and

other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference.  See *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999) (citing *Pascariello v. Heckler*, 621 F.Supp. 1032, 1036 (S.D.N.Y. 1985)); see also *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999).

The Court finds that the ALJ exercised his discretion in this case to evaluate the credibility of Plaintiff's testimony, presented a fair summary of his evaluation, and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence.  See e.g. *Mimms v. Sec'y of Health and Human Servs.*, 750 F.2d 180, 185 (2d Cir. 1984).  Therefore, the Court finds the ALJ did not err when he found Plaintiff's testimony regarding the severity of his pain and other symptoms to not be entirely credible.

### d.  Substantial Evidence Supports the ALJ's Treating Physician Analysis.

Plaintiff contends the ALJ improperly and inconsistently weighed the opinions of the treating physicians.  First, Plaintiff claims that Dr. Merrihew's opinion was entitled to more than "some" weight.  Second, Plaintiff argues that the ALJ's statement that "Dr.Merrihew did not submit any supporting evidence that would warrant such drastic limitations [in his ability to work]" was inconsistent with the records provided by this treating physician.

The treating physician rule requires an ALJ to give controlling weight to a "treating source's opinion[s] on the issue(s) of the nature and severity of [a claimant's] impairment(s) "if the opinion are well supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not

inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2);
see also *Rosa v. Callahan,* 168 F.3d 72, 78-79 (2d Cir. 1999). When an ALJ
does not give the treating source's opinion controlling weight, he will apply the
listed factors "in determining the weight to give the opinion." 20 C.F.R. §
404.1527(d)(2). The listed factors are: (i) length of the treatment relationship and
frequency of examination; (ii) the nature and extent of the treatment relationship;
(iii) the evidence supporting the opinion; (iv) the opinion's consistency with the
whole record; (v) whether the source is a specialist; and (vi) other factors that
support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2)-(6),
416.927(d)(2)-(6). Finally, the regulations provide that the ALJ "will always give
good reasons … for the weight [he] give[s] [a] treating source's opinion." *Id.*

In the instant case, Plaintiff points to the findings of Dr. Merrihew that
suggest Plaintiff was under a "total disability." (R. at 483, 485, 487). Also, Dr.
Merrihew awarded Plaintiff total disability compensation rates from May 23, 2002,
through September 9, 2003, pursuant to a Worker's Compensation Benefits
claim. (R. at 114-118). Further, Plaintiff asserts Dr. Merrihew's opinions are
consistent with Dr. Scialabba and Dr. Robert Selig. Dr. Scialabba, a treating
physician, reported as early as July 19, 2002, that Plaintiff is "100% disabled."
(R. at 204-219). It appears Plaintiff contends that Dr. Robert Selig's reports were
consistent with Dr. Merrihew and Dr. Scialabba. (R. at 361).

The ALJ noted his obligation to comply with the treating physician's rule
(R. at 19), but concluded that the opinion of Dr. Merrihew was entitled "some

weight." (R. at 19-20). The Court finds that the ALJ applied the correct legal standard for the following reasons:

First, the issue of "disability" under the Act is not a medical issue to be decided by a treating source, but an administrative finding reserved to the Commissioner. 20 C.F.R.§ 404.1527(e); SSR 96-5p, 1996 SSR LEXIS 2. A statement by a treating physician that an individual is disabled is not, by itself, controlling. The ALJ is thus not obligated to accept the assessment of a claimant's treating physician or any other source as to the ultimate question of whether claimant is disabled. See 20 C.F.R.§ 404.1527(e)(1); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

Second, the disability findings by Dr. Merrihew and Dr. Scialabba were made in the Workers' Compensation context, which applies different standards relative to disability determinations than those applied by the Commissioner. See *Rosado v. Shalala*, 868 F. Supp. 471, 473 (E.D.N.Y. 1994) (citing *Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984) ("Although plaintiff's doctors had checked off that plaintiff was disabled on forms sent to the Workers' Compensation Board, the standards which regulate worker's compensation relief are different from the requirements which govern the award of disability insurance benefits under this Act. Accordingly, an opinion rendered for purposes of workers' compensation is not binding on the Secretary."); see also *Crow v. Comm'r of Soc. Sec.,* No. 01-CV-1579, 2004 U.S. Dist. LEXIS 14379, 2004 WL 1689758 at 3 (N.D.N.Y. July 20, 2004) (the ALJ was not required to adopt a treating physician's opinion that Plaintiff was "totally" disabled, in part, because

"the opinions were rendered in the context of Plaintiff's Workers Compensation claim, which is governed by standards different from the disability standards under the Social Security Act").

Third, Dr. Merrihew's February 29, 2004 medical opinion was inconsistent with substantial evidence in the record prior to September 23, 2004.  On February 29, 2004, Dr. Merrihew opined that "claimant had limitations in standing and walking 30 minutes and no bending or carrying over 10 pounds."  (R. at 19-20).  However, Dr. Merrihew himself noted that "patient is working," as well as "patient is not disabled from regular work duties" on January 29, 2002.  (R. at 139).  On November 26, 2002, Dr. Belmonte opined after examination that "claimant could be employed on a full time basis…" (R. at 54).  On February 6, 2003, Dr. Scialabba stated "Plaintiff was ready to consider light duty or sedentary work."  (R. at 19, 17-18).  Moreover, Dr. Merrihew's February 29, 2004 medical opinion was subsequent to Plaintiff last insured date on June 30, 2001.

Additionally, the ALJ gave the March 14, 2006, opinion of claimant's treating orthopedist, Dr. Sellig, controlling weight as to the assessment for less than sedentary work. (R. at 19).  The ALJ noted that "…for the most part, Dr. Merrihew's opinion supports the opinion of Dr. Sellig."  (R. at 20).  The record shows that Dr. Sellig's opinion was not dispositive on Plaintiff's condition on or before the last insured date of June 30, 2001.

Finally, the ALJ's explanation for the weight he gave to Dr. Merrihew's opinion was not legal error.  First, the ALJ noted that "Dr.Merrihew did not submit any supporting evidence that would warrant such drastic limitations" for the

27

February 29, 2004 medical opinion.  (R. at 19).  Further, there is no evidence

indicating that Dr. Merrihew is a specialist in a particular medical specialty.

Lastly, Dr. Merrihew's opinion was contradicted by substantial evidence in the

record as set forth above.

Under the circumstances presented in this case, it can not be said that the

ALJ disregarded the medical evidence from Plaintiff's treating physicians and

instead substituted his lay opinion for competent medical evidence.  Rather, the

ALJ carefully considered all of the evidence.  The ALJ's ultimate determination

was made in accordance with applicable legal standards and is supported by

substantial evidence.

> **e.     The ALJ Properly Evaluated the (i)
> Medication Effects and (ii) Mental Health
> Impairment on Plaintiff's Residual
> Functional Capacity Prior To September 23,
> 2004.**

> > **(i)     Medication Effects Prior to
> > September 23, 2004.**

Plaintiff contends the ALJ failed to adequately consider the nonexertional

effects of Plaintiff's medications on his residual functional capacity prior to

September 23, 2004.  (Plaintiff's Brief at 2).  First, Plaintiff states the medication

makes him "go to sleep" and "causes blurred vision."  (R. at 552).  Second,

Plaintiff refers to Vocational Expert Garosso's testimony that a worker's capacity

for concentration would be diminished by Plaintiff's medication side effects.  (R.

at 576).

At the fourth step of the sequential evaluation, an ALJ must determine a claimant's Residual Functional Capacity, which is the most that a claimant can do despite his or her limitations.  20 C.F.R. § 404.1545(a)(1).

The Commissioner's Residual Functional Capacity assessment "must address both the remaining exertional and nonextertional capacities of the individual."  Social Security Ruling 96-8p.  "Exertional" capacities refer to how a claimant's limitations and physical restrictions affect the ability to perform the seven strength demands of sitting, standing, walking, lifting, carrying, pushing, and pulling.  *Id.*  "Nonexertional"[12] capacities refer to "all physical limitations and restrictions that are not reflected in the seven strength demands, and mental restrictions limitations and restrictions", including postural, manipulative, visual, communicative, and mental restrictions.  *Id.*  The Residual Functional Capacity analysis must "[s]et forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work."  *Id.*; see 20 C.F.R. § 404.1529(c)(4).

If the claimant suffers from significant nonextertional impairments, "application of the grids is inappropriate."  *Rosa v. Callahan*, 168 F.3d 72, 82 (quoting *Bapp v. Bowen*, 802 F.2d 601, at 605-606 (2d Cir. 1986).  Instead, "the Commissioner 'must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform'."  *Id.*  (quoting *Bapp*, 802 F.2d at 603).

---

[12] Nonexertional impairments include but are not limited to: anxiety, depression, difficulty maintaining attention, and difficulty understanding or remembering detailed instructions.  20 C.F.R. § 404.1569a(C)(1)(i)-(iii).

In this case, the ALJ noted that Plaintiff's medications do not cause any side effects which are consistent with Plaintiff's testimony at the October 4, 2005 hearing.  (R. at 18; R at 515).  Although the ALJ did not discuss Plaintiff's testimony from the November 27, 2006 supplemental hearing that medication makes him "go to sleep" and causes "blurred vision," the record provides no medical evidence documenting Plaintiff's grogginess or sustained blurred vision as a result of medication prior to September 23, 2004.  For these reasons, the Court finds the ALJ properly evaluated Plaintiff's medication side effects prior to September 23, 2004.

### (ii) Mental Impairment Prior To September 23, 2004.

Plaintiff also contends that the ALJ filed to adequately consider the effects of Plaintiff's mental impairment on his residual functional capacity prior to September 23, 2004.  Specifically, Plaintiff refers to his depression worsening since he stopped working.  (R. at 548).

When evaluating the severity of mental impairments, the regulations require the ALJ to apply a "special technique" at the second and third steps of the review, in addition to the customary sequential analysis.  *Kohler v. Astrue*, 546 F.3d 260, 265-66 (2d cir. 2008) (citing 20 C.F.R. § 404.1520a).

The technique first requires a determination as to whether the Plaintiff has a medically determinable mental impairment.  20 C.F.R. § 404.1520a(b)(1).  Then, the ALJ must rate the degree of Plaintiff's functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social

functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.[13]  See 20 C.F.R. § 404.1520a(c)(3).

These are areas rated on a scale of "none, mild, moderate, marked, and extreme."  20 C.F.R. §§ 404.1520a(c)(4); 416.920a(c)(4).  A mental impairment is generally found not severe if the degree of limitation in the first three areas is mild or better and there are no episodes of decompensation.  §404.1520a(d)(1). The ALJ must document "a specific finding as to the degree of limitation in each of the functional areas."  20 C.F.R. § 404.1520a(e)(2).

In this case, Plaintiff appears to contend that his mental impairment meets or is medically equal to the criteria for the impairment contained in 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04 of the Listings (Affective Disorders).  To establish that his impairments meet or equal § 12.04, Plaintiff must first satisfy one of the threshold criteria set forth in Subsection (A) of the impairment descriptions.  This typically involves proof of a medically determined mental impairment, combined with evidence of some definite limitations caused by that impairment.

If Plaintiff falls within the threshold parameters of Subsection (A), the inquiry turns to Subsection (B) of § 12.04 to determine whether his "mental impairments resulted in at least two of the following: (1) marked restrictions in activities of daily living; (2) marked restrictions in social functioning; (3) marked

---

[13] "Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace."  United States Social Security Administration, Disability Evaluation Under Social Security § 12.00 (June 2006) *available* at http://www.ssa.gov/disability/professionals/bluebook/12.00-Mentaldisorders-Adult.htm

restrictions in maintaining concentration, persistence, or pace; (4) repeated episodes of decompensation, each of extended duration." *Paratore v. Comm'r of Social Security Admin.*, No. 05-CV-1356, 2008 WL 541156 at 5 (N.D.N.Y. Feb. 25, 2008).

Plaintiff does not satisfy the Subsection (A) criteria under § 12.04 because there is an absence of medical evidence regarding persistent depressive symptoms prior to September 23, 2004.  The ALJ stated that the Plaintiff "began seeking treatment in April 2005."  (R. at 20, 5-6).  Also, the ALJ noted that "claimant had not had any prior treatment, counseling, or hospitalizations."  (R. at 20, 4-5).  The medical record supports such assertions.  Dr. Merrihew examined Plaintiff and found no evidence of limitation for understanding instructions, carrying out instructions, maintaining attention, making simple decision, interacting appropriately with others, maintaining socially appropriate behavior, and maintaining basic standards of personal hygiene on February 29, 2004.  (R. at 256).  Therefore, the Court finds there is no medical evidence supporting that Plaintiff suffered from depression prior to September 23, 2004.

Additionally, the ALJ indicated that "claimant has mild restrictions of daily living resulting from such a mental impairment."  (R. at 20, 22-24).  Further, the ALJ noted "claimant has moderate limitations in social functioning and moderate limitations in maintaining concentration, persistence or pace.  The claimant had no episodes of deterioration or decompensation of extended duration."  (R. at 20, 24-26).  For the reasons set forth above, the Court finds that the ALJ fully and properly evaluated Plaintiff's nonexertional impairments.

      **f.**    **Substantial Evidence Supports the ALJ's Determination of Plaintiff's Residual Functional Capacity Prior to September 23, 2004.**

Plaintiff claims that the ALJ erred by finding that he can perform the full range of light work prior to September 23, 2004.  In particular, Plaintiff appears to argue that his depression, back impairment, as well as chronic obstructive pulmonary disease, preclude his performance of the full range of light work prior to September 23, 2004.

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.  *Id.*

When making an RFC determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis.  20 C.F.R. § 404.1545(a).

In this case, the ALJ noted that before September 23, 2004, Plaintiff had "additional limitations" beyond the full range of light work.  (R. at 21).  Moreover, the Vocational Expert's assessed that Plaintiff's RFC included the performance of occupations such as "photo machine operator" (R. at 21 and R. at 572), a position in the light work category.  Based on the vocational expert's testimony,

the ALJ found that before September 23, 2004, the Plaintiff was "not disabled."
(R. at 21).

Plaintiff's contention is misguided for three reasons.  First, the ALJ did not
determine that Plaintiff could perform the full range of light work prior to
September 23, 2004. Instead, while the ALJ found that Plaintiff retained the RFC
to perform the exertional requirements of light work[14], he concluded that
Plaintiff's non-exertional impairments limited him to entry level light work that
involved no concentrated gasses, fumes, odors, smoke, dust, or poor ventilation,
no complex decision making, no climbing on ladders or scaffolds, and no walking
on uneven ground.  (R. at 571-572).

Second, there is no medical evidence to support Plaintiff's disability prior
to September 23, 2004.  It appears Plaintiff's argument is based upon Plaintiff's
testimony, as well as Beverly Waite's testimony, for the time period prior to
September 23, 2004.  As to Plaintiff's testimony the court finds that the ALJ
exercised his discretion to evaluate the credibility of Plaintiff's statements and
rendered an independent judgment regarding the extent of his subjective
complaints based on the objective medical evidence as set forth above.  As to
both Plaintiff's and Beverly Waite's testimony, there is no support in the record
that Plaintiff cannot perform the requirements of simple entry light work, subject
to the restrictions noted by the ALJ.  Indeed, before 2005 there was no evidence
of Plaintiff procuring treatments for depression.  As to chronic obstructive
pulmonary disease, on October 6, 2003, Dr. Dashnaw noted that Plaintiff smokes

---

[14] Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of
objects weighing up to ten pounds.  See 20 C.F.R. §§ 404.1567(b).

two packs of cigarettes per day.  (R. at 303-304).  As to the back impairment, Dr. Dominic Belmonte found Plaintiff had no spasm in the back, and he showed full range of motion of the lumbosacral spine on November 26, 2002.  (R. 19, 238). Additionally, Dr. Donald Merrihew found Plaintiff was working and not disabled on January 29, 2002. (R. 139-140).

Third, Plaintiff's active lifestyle supports the ALJ's assessment of his RFC. Dr. Dominic Belmonte indicated that after Plaintiff was fired in 1999 he "subsequently worked for approximately 7 months cutting logs for his brother's firewood company."  (R.at 239, 13-15).  Also, Plaintiff "feeds his 7 pigs, 2 goats, 12 ducks and 24 chickens."  (R. at 238, 6-7).  Lastly, Plaintiff testified that he has hunted up until 2001.  (R. at 519, 25).

In light of the reasoning set forth above, the Court finds that substantial evidence supports the ALJ's RFC determination for the period prior to September 23, 2004.

## IV. Conclusion

After carefully examining the administrative record, the Court finds substantial evidence supports the ALJ's decision, including the objective medical evidence and the supported medical opinions.  It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating sources, and afforded Plaintiff's subjective claims of pain and other limitations an appropriate weight when rendering his decision that Plaintiff is not disabled prior to September 23, 2004. The Court finds no reversible error.  Because the Court further finds that

substantial evidence supports the ALJ's decision, the Court will Grant

Defendant's motion for Judgment on the Pleadings and Deny Plaintiff's motion

seeking the same.


      IT IS HEREBY ORDERED, that Defendant's Motion for Judgment on the

Pleadings is GRANTED.


      FURTHER, that Plaintiff's Motion for Judgment on the Pleadings is

DENIED.

      FURTHER, that the Clerk of the Court is directed to take the necessary

steps to close this case.


      SO ORDERED.


_____

Victor E. Bianchini
United States Magistrate Judge


DATED:      Syracuse, New York
            November 13, 2009